

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,           )
                                       )

              Respondent,    )

                                       )

        v.                    )     No. SC93108

                                       )

DENFORD JACKSON,         )

                                       )

             Appellant.      )

## APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
The Honorable Michael F. Stelzer, Judge

### *Opinion issued June 24, 2014*

The question presented in this case is whether the trial court can refuse to give a lesser included offense instruction requested by the defendant under section 556.046 when the lesser offense consists of a subset of the elements of the charged offense and the differential element (i.e., the element required for the charged offense but not for the lesser offense) is one on which the state bears the burden of proof. The answer, unequivocally, is no.

Here, a jury found Denford Jackson guilty of robbery in the first degree. The trial court declined to instruct the jury on second-degree robbery, as Jackson requested. A lesser included offense instruction was not required, the trial court held, because there was no basis in the evidence for a reasonable juror to determine that the victim did not

reasonably believe that Jackson was holding a gun to her back throughout the robbery. This was error. A jury *always* can disbelieve all or any part of the evidence, just as it always may refuse to draw inferences from that evidence. Accordingly, in a criminal case, the trial court cannot refuse a defendant's request for this type of "nested" lesser offense instruction based solely on its view of what evidence a reasonable juror must believe or what inferences a reasonable juror must draw.

Here, there was a basis in the evidence for the jury to find that the victim did not reasonably believe Jackson held a gun on her because the jury did not have to believe any of the evidence and did not have to infer that the victim believed anything, reasonably or otherwise. To put it simply, evidence never proves any element until the jury says it does. Accordingly, Jackson's robbery conviction is vacated, and the case is remanded.

## I.	*Facts*

The jury found that Jackson entered a coffee shop on the morning of August 27, 2009, loitered in the store for several minutes, and then robbed the store's cash register while holding a gun on the employee. The only people in the shop at the time of the robbery besides the employee were two customers, JS and SS. All three testified in the state's case at trial.

Jackson entered the coffee shop through the dining area, walked toward the table where JS and SS were seated, and had a short conversation with SS. Neither JS nor SS noticed whether Jackson had a gun, though JS noticed that he kept his hand in his pocket all the time SS was speaking with him. After his brief conversation with SS, Jackson

crossed over to the convenience store side of the shop where the cash register was located.

Neither JS nor SS noticed where Jackson went when he left the dining area, but they both soon noticed that he was standing close behind the employee at the cash register behind the counter. Again, neither could see whether Jackson had a gun, but they could see Jackson only from behind and from the waist up. Though SS thought they were counting money out of the cash register, she could not hear what either was saying. Neither customer saw Jackson leave or knew that anything untoward had occurred until the employee ran out of the kitchen saying she had been robbed.

The employee testified that she was in the kitchen when the incident began and did not notice Jackson until he came through the door behind the cash register counter. It was not unusual for customers to come into the kitchen looking for the dining area, so the employee approached Jackson to provide directions. When she got near him, he grabbed her arm and turned her around until she was heading back out the door toward the cash register.

> I felt something in my back. Looked down and it was a gun, and he said – exactly I don't know what it was. Basically, take me to the drawer. … I looked down and I could see it after I had looked down and he guided me forward. … I saw it. Not a super long barrel but a six-inch barrel, silverish. … It was a revolver.

After the employee gave Jackson the money from the cash register, he took her back into the kitchen, made her lie down, patted her pockets looking for additional money, and then exited the shop through the door on the market side. As soon as she heard the door open and close, the employee yelled for help. She tried to telephone the

3

police but had to have JS and SS help her because her hands were shaking too badly to dial her phone.

In addition to the foregoing testimony from the employee and the two customers, the state introduced videos of the incident taken from multiple angles by the coffee shop's video surveillance system. These videos show Jackson entering the shop with one hand in his pocket, stopping for a minute or less near SS, and then moving into the empty market side of the shop. There, Jackson is seen looking around, taking something out of his pocket, examining it, and then entering the kitchen through the door behind the cash register counter. Seconds later, the employee is seen coming out of the kitchen with Jackson pressed firmly behind her. He is holding the employee with one hand, and his other hand is holding an object against the small of her back. Jackson's head is close to, and along side of, the employee's head so he can see where she is going. He directs her behind the counter and over to the cash register.

After the employee hands Jackson the money from the cash register, he and the employee are seen emerging from behind the counter. The employee turns right, away from the kitchen, but Jackson plainly expects her to turn left into the kitchen. As a result, for the only time in any of the videos, the two are separated by more than a couple of inches. Jackson is seen extending his arm fully to keep the object in his hand (which, at that point, is plainly visible) shoved firmly against the small of the employee's back. Jackson again grabs the employee with his other hand, turns her toward the kitchen and closes up next to her again. There is no camera in the kitchen, but a camera in the dining area points through the partially open door to the kitchen. This captures Jackson

4

reentering the kitchen with the employee, putting her on the kitchen floor, patting her pockets as though looking for money, and then leaving through the market area.

A police detective viewed these videos during his testimony as well as enlargements of individual frames from those videos. He testified that, in several shots, he could see that Jackson is holding a small, dark blue or black pistol to the employee's back. In addition, when the video shows Jackson taking something out of his pocket and inspecting it before first entering the kitchen to grab the employee, the detective testified that these gestures distinctly are those of someone checking a revolver to see if it is loaded. In other words, the detective testified that it looked to him as though Jackson was releasing the cylinder to swing it out and to the left, spinning the cylinder, and then reseating it in front of the hammer. Though the detective admitted on cross-examination that it was possible that "a person could pull something out that appears to be a gun to you on this blurry video but [it] could be a cell phone," the detective did ***not*** admit it was possible that this video shows Jackson holding a cell phone and not a gun. Instead, the detective noted that people do not check to see if their cell phone is loaded right before committing a crime.

At the close of the evidence, Jackson's counsel requested that the trial court instruct the jury on both second-degree robbery and first-degree robbery, the crime with which Jackson was charged. The only difference between these two instructions is that a conviction of first-degree robbery requires the jury to find the following element, but a conviction for second-degree robbery does not:

5

[T]hat in the course of taking the property, the defendant displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument.

*Compare* §§ 569.020 and 569.030, RSMo 2000.[1]

In support of his request that the jury be instructed on second-degree robbery, Jackson's counsel argued:

[T]he argument is that in the video there is evidence to dispute or refute her testimony that there was, in fact, a gun; therefore, ***the jury could take that video evidence and not only disbelieve her that she believed there was a gun. They may believe that she was completely mistaken, and therefore it was not a reasonable belief***. There was no testimony that there was a threat I had a gun or statements such as there is a gun. The only evidence that there was a gun is [the employee's] testimony that she looked down for a split second and saw a gun. I think that the video refutes that. I think therefore we are entitled to an instruction on robbery in the second degree. [Emphasis added].

The trial court refused to instruct the jury on the lesser included offense of robbery in the second degree, stating "if I were to submit it here then I'd have to submit it every time there's a robbery first brought, and I don't think that that's the law." After viewing the videos and still photos of the crime during its deliberations, the jury found Jackson guilty of robbery in the first degree.[2]

---

[1]  To be clear, this element requires the jury to find beyond a reasonable doubt that the defendant objectively displayed or threatened to use an object during the robbery. If so, the jury also must find that the object appeared to the victim – subjectively, but reasonably – to be a gun or other deadly weapon or dangerous instrument.

[2]  Jackson also was charged and found guilty of armed criminal action. The instruction for this count stated that the jury could convict him of armed criminal action only if it found beyond a reasonable doubt that Jackson committed robbery in the first degree and that he "committed that offense by or with or through the use or assistance or aid of a deadly weapon." Based on the jury's verdicts, therefore, the jury not only found beyond a reasonable doubt that the object in Jackson's hand reasonably *appeared* to the employee to be a gun, the jury found beyond a reasonable doubt that the object in Jackson's hand *was* a gun.

Jackson moved for a new trial based, in part, on the trial court's failure to instruct on second-degree robbery. The court overruled this motion and sentenced Jackson to concurrent 30 and 10-year sentences for the robbery and armed criminal action convictions, respectively. Jackson timely filed this appeal, and this Court has jurisdiction over the matter. *See* Mo. Const. art. V, § 10. Jackson's judgment of conviction on both counts is vacated, and the case is remanded.

## II.    *Standard of review*

This Court reviews *de novo* a trial court's decision whether to give a requested jury instruction under section 556.046, RSMo Supp. 2002,[3] and, if the statutory requirements for giving such an instruction are met, a failure to give a requested instruction is reversible error.[4] *State v. Derenzy*, 89 S.W.3d 472, 475 (Mo. banc 2002).

## III.    *Analysis*

Jackson concedes that the evidence in this case was sufficient to support the jury's verdict that he was guilty of first-degree robbery. The employee testified that he held a

---

[3]  Statutory references are to the version of the statute in effect on August 27, 2009, when this crime occurred. No changes to the procedural statutes, e.g., § 556.046, occurred after that date.

[4]  An appellate court will not remand for a new trial on the basis of an error that did not violate a defendant's constitutional rights unless "there is a reasonable probability that the trial court's error affected the outcome of the trial." *State v. Forrest,* 183 S.W.3d 218, 224 (Mo. banc 2006). Here, any such prejudice from the refusal to instruct the jury on second-degree robbery seems logically inconsistent with the fact, discussed above, that the jury found both that the object in Jackson's hand reasonably appeared to be a gun and that he actually used a gun. The Court need not reconcile these, however, because prejudice is presumed when a trial court fails to give a requested lesser included offense instruction that is supported by the evidence. *State v. Redmond*, 937 S.W.2d 205, 210 (Mo. banc 1996) (defendant "is entitled to a new trial before a properly instructed jury").

gun on her, and, if the jury believed her testimony beyond a reasonable doubt, her testimony was sufficient to convict Jackson of first-degree robbery.

Rather than argue that the evidence was insufficient to convict him of first-degree robbery, Jackson claims that the evidence also was sufficient to convict him of second-degree robbery and, therefore, the trial court erred in refusing to instruct the jury on that lesser included crime. His claim is based solely on section 556.046, and he asserts no state or federal constitutional right to this lesser included offense instruction.[5] Accordingly, the analysis of Jackson's claim begins with the statutory language:

> The court shall not be obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense. …

§ 556.046.2.

Although this Court generally relies only on the foregoing section 556.046.2 to analyze claims involving lesser included offense instructions, *see, e.g., State v. Pond*, 131 S.W.3d 792, 794 (Mo. banc 2004); *State v. Thomas*, 161 S.W.3d 377, 380 (Mo. banc 2005), this statute was amended in 2001 to include an entirely new subsection addressing this same subject:

---

[5]  This decision not to raise a constitutional claim at trial may have reflected the "widely held view that failure of a state court to instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional question[.]" *Trujillo v. Sullivan*, 815 F.2d 597, 607 (10th Cir. 1987) (*citing Easter v. Estelle,* 609 F.2d 756, 758 (5th Cir.1980); *James v. Reese,* 546 F.2d 325, 327 (9th Cir.1976); *DeBerry v. Wolff,* 513 F.2d 1336, 1339 (8th Cir.1975)). Jackson attempts to assert constitutional claims for the first time in his point relied on in this Court. Not only were the claims not raised at the first opportunity, but Jackson also failed to develop them in the argument portion of his brief. Accordingly, these arguments are not properly before the Court.

The court shall be obligated to instruct the jury with respect to a particular included offense only if there is a basis in the evidence for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for convicting the defendant of that particular included offense.

§ 556.046.3, RSMo.

Despite the addition of subsection 3 and its emphasis that a lesser included offense instruction must be justified by a "basis *in the evidence*," § 556.046.3 (emphasis added), this Court's interpretation of section 556.046 did not change after 2001. *See State v. Williams*, 313 S.W.3d at 659 n.5 (Mo. banc 2010) (quoting both subsections without noting any substantive difference between the two). Accordingly, the Court views these statutory provisions as interchangeable for purposes of whether the trial court is obligated to give an instruction on a first-level lesser included offense,[6] and they provide that a trial court is obligated to do so when each of the following requirements is met:

---

[6] Another effect of the 2001 amendments to section 556.046 was to clarify the analysis when a party asks for multiple lesser included offense instructions. In *State v. Hibler*, 5 S.W.3d 147, 150 (Mo. banc 1999), the state argued that section 556.046.2 did not allow this. The 2001 amendments added section 556.046.3 (which avoids the phrase "charged offense" that was the basis for the state's argument in *Hibler*), and changed the definition of "charged offense" in section 556.046.2 to include any lesser included offense for which an instruction is required. As a result, a trial court may be obligated to give multiple lesser included offense instructions because the first-level included offense is both a "charged offense" under section 556.046.2 and a "higher included offense" under section 556.046.3.

9

a. a party timely requests the instruction;[7]

b. there is a basis in the evidence for acquitting the defendant of the charged offense; and

c. there is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested.

In this case, there is no dispute about the first requirement. And, because the elements of second-degree robbery are a subset of the elements of first-degree robbery, there is no dispute about the third requirement. The outcome of Jackson's appeal, therefore, depends solely on the second requirement, i.e., whether there was a basis in the evidence for acquitting him of first-degree robbery.

For there to be a basis in the evidence to acquit Jackson of first-degree robbery and yet convict him of second-degree robbery, there must be a basis in the evidence for concluding that the state failed to prove the one element that separates the two crimes. Here, that differential element is whether the employee reasonably believed the object Jackson held against her back throughout the robbery was a gun. Accordingly, Jackson can only show that the trial court erred if there was a basis in the evidence to conclude that the employee had no such belief or that it was not reasonable.[8]

---

[7] Even when the defendant does ***not*** request a lesser included offense instruction, this Court recently held that a defendant who was convicted of a greater offense states a valid claim for post-conviction relief under Rule 29.15 by alleging that counsel's failure to request the instruction resulted from "inadvertence" rather than reasonable trial strategy. *McNeal v. State*, 412 S.W.3d 886, 889-90 (Mo. banc 2013). Because there was no record made during trial that defense counsel's decision not to request a lesser included offense instruction was a deliberate (and objectively reasonable) strategic choice, the Court held that the defendant was entitled to an evidentiary hearing and a chance to prove his claim and have the conviction set aside. *Id.* at 891.

[8] By the same token, Jackson's request that the trial court give a lesser included instruction on stealing depended on there being a basis in the evidence to conclude that the state failed to prove

10

Jackson argues that a sufficient basis in the evidence is established by the surveillance videos and the discrepancy between the employee's testimony that Jackson's gun was "silverish" and the detective's testimony that it was dark-blue or black.  The state responds that, at most, this evidence disputes only whether Jackson actually held a gun on the employee, not whether she reasonably believed he was holding a gun on her.  The state's position is correct, but immaterial.

What matters here is not whether Jackson actually displayed or threatened to use a gun, but whether the object that Jackson plainly did display (and that Jackson plainly did use or threaten to use) *appeared to the employee* – subjectively, but reasonably – to be a gun.  Defense counsel did not identify any evidence refuting (or offer any argument why the state's evidence did not show) that the employee believed Jackson held a gun on her and that her belief was reasonable.  Instead, he merely stated that the jury could choose to believe that the employee "was completely mistaken [about seeing a gun] and therefore it was not a reasonable belief."

Even though the state's logic is correct, its argument is immaterial.  The essence of the state's contention is that the jury's right to disbelieve all or part of the state's evidence cannot, by itself, constitute a "basis in the evidence" to acquit the defendant of the greater (or charged) crime for purposes of section 556.046.  This Court disagrees.  For support, the state quotes *State v. Olson*, 636 S.W.2d 318 (Mo. banc 1982):

> The key phrase of that section is "a basis for a verdict".  It could be argued
> that the jury's disbelief of the evidence necessary to establish an element of

*both*: (a) that the employee reasonably believed that the object Jackson was using was a gun, *and* (b) that Jackson used some degree of force (no matter how slight) during the crime.

11

the greater offense is such a basis.  However, such a construction would require an instruction on a lesser included offense in the vast majority of cases. … ***Even if the jury were to "disbelieve some of the evidence of the State, or decline to draw some or all of the permissible inferences, (this) does not entitle the defendant to an instruction otherwise unsupported by the evidence***, on the issue of accidental homicide pursuant to § 559.050, ...." *Achter*, 448 S.W.2d at 900.  It has consistently been held that an instruction on a lesser included offense is required ***only where there is evidence with probative value which could form the basis of an acquittal of the greater offense*** and a conviction of the lesser included offense.

*Id.* at 321 (emphasis added).  But *Olson* is no longer valid.

In *State v. Santillan*, 948 S.W.2d 574 (Mo. banc 1997), the state invoked *Olson* to support its argument that a lesser included offense instruction was not appropriate unless the defendant introduced affirmative evidence disputing the differential element.  This Court held that a "defendant is not required to put on affirmative evidence" to justify the lesser included instruction and, "[t]o the extent that *Olson* … may be read to require a defendant to put on affirmative evidence as to the lack of an essential element of the higher offense, [it is] overruled." *Id*. at 576.

Because this statement overruling *Olson* was qualified, the state continued to rely on *Olson*.  In *Pond*, 131 S.W.3d 792, 794, the state cited several lower court opinions for its argument that "a defendant is not entitled to a lesser-offense instruction merely because a jury might disbelieve some of the state's evidence." *Id*.  The decisions cited by the state, however, all relied on *Olson*.  Accordingly, *Pond* responds:  "This Court, however, overruled *Olson, **and its interpretation of section 556.046.2**." *Id*. (emphasis added) (citing *Santillan,* 948 S.W.2d at 576).  *Pond* then explains why the state's argument, and the statements in *Olson* on which that argument relies, are wrong:

12

> A defendant is entitled to an instruction on any theory the evidence establishes. *Hibler,* 5 S.W.3d at 150. This Court leaves to the jury determining the credibility of witnesses, resolving conflicts in testimony, and weighing evidence. *Rousan v. State,* 48 S.W.3d 576, 595 (Mo. banc 2001). ***A jury may accept part of a witness's testimony, but disbelieve other parts.*** *State v. Redmond*, 937 S.W.2d 205, 209 (Mo. banc 1996). If the evidence supports differing conclusions, the judge must instruct on each. *Hibler,* 5 S.W.3d at 150.

*Id.* (emphasis added).

As in *Santillan*, however, *Pond* fails to fasten the lid down on *Olson* strongly enough. Because *Pond* states, "[L]ike *Olson,* the cases cited by the State are overruled, to the extent they require affirmative evidence from the defendant," *id.*, this last limiting phrase allowed the state to resurrect *Olson* again in *Williams*, 313 S.W.3d 656. In *Williams*, this Court again set forth – and again rejected – the state's argument:

> The State mistakenly relies on [three court of appeals decisions] to support its argument that a ***defendant is not entitled to a lesser included offense instruction merely because the jury might disbelieve some of the State's evidence***. These three cases rely on the previously overruled case of *State v. Olson … Olson* was overruled by *Santillan,* 948 S.W.2d at 576 ("To the extent that *Olson …* may be read to require a defendant to put on affirmative evidence as to the lack of an essential element of the higher offense, [it is] overruled.").

> While the State acknowledges that after *Santillan,* the *defendant* was not required to put on affirmative evidence, it nonetheless argues that Williams was not entitled to a lesser included offense instruction because there was no affirmative evidence supporting his instruction. Therefore, ***the State contends, Williams was not entitled to the instruction on the sole basis that the jury might disbelieve some of the State's evidence. This Court rejected that same argument in Pond, a post-Santillan case.*** Here, as in *Pond,* the State relies on pre-*Santillan* cases and argues that "a defendant is not entitled to a lesser included offense instruction merely because a jury might disbelieve some of the State's evidence." 131 S.W.3d at 794. In *Pond,* this Court rejected the State's argument, stating, "A defendant is entitled to an instruction on any theory the evidence establishes." *Id.* at 794.

*Id.* at 660-61 (emphasis added).

Even though *Williams* flatly rejects the state's argument and expressly rejects the state's continued reliance on any remnants of *Olson*, it again fails to fasten the lid on *Olson* tight enough to prevent the state from continuing to make this twice-rejected argument. In *Williams* – as in *Pond* – the Court merely referenced that *Santillan* overruled *Olson* to the extent that it requires a defendant to put on affirmative evidence as to the lack of the differential element. *Id.* at 660. Neither *Pond* nor *Williams* expressly overrules the remainder of *Olson* on which the state repeatedly – but unsuccessfully – relies. The Court now does so.

The state argues that Jackson was not entitled to an instruction on the lesser included offense of second-degree robbery solely because the jury could refuse to believe that the employee saw a gun in Jackson's hand or reasonably believed it was a gun that he was holding against her back throughout the robbery. Even though *Williams* and *Pond* expressly rejected such an argument, the state continues to assert it and continues to claim that it is supported by the parts of *Olson* it claims survived *Santillan*.

Accordingly, because the state continues to rely on the part of *Olson* that survived *Santillan* to assert an argument that this Court has twice rejected expressly, and because *Williams* and *Pond* continue to suggest that some part of *Olson* remains good law despite explicitly rejecting ***all*** of its reasoning, the Court again holds that the jury's right to disbelieve all or any part of the evidence and its right to refuse to draw needed inferences is a sufficient basis in the evidence – by itself – for a jury to conclude that the state has

14

failed to prove the differential element.  To the extent *Olson* suggests anything to the contrary, it is overruled.

The holdings of *Pond* and *Williams* should have made lesser included offense instructions nearly universal, at least when the differential element is one for which the state bears the burden of proof.  All decisions as to what evidence the jury must believe and what inferences the jury must draw are left to the jury, not to judges deciding what reasonable jurors must and must not do.[9]  *Pond,* 131 S.W.3d at 794; *Williams*, 313 S.W.3d at 660.  The Court now reaffirms those holdings because, as long as the jury has the right to disbelieve all or any part of the evidence, and refuse to draw needed inferences, section 556.046 cannot be read any other way.[10]  *See Pond,* 131 S.W.3d at 794 ("defendant is entitled to an instruction on any theory the evidence establishes" and "if the evidence supports differing conclusions, the judge must instruct on each"); *Williams*, 313 S.W.3d 659-60 ("jury may accept part of a witness's testimony, but disbelieve other parts") (*quoting* MAI–CR 3d 304.11.G).  "Doubts concerning whether to instruct on a lesser included offense should be resolved in favor of including the instruction, leaving it to the jury to decide."  *Derenzy,* 89 S.W.3d at 474-75).

---

[9]  *Williams* quotes prior opinions that purport to decide what instructions to give based on what the court thinks a reasonable jury can and cannot refuse to believe.  *Williams*, 313 S.W.3d at 660. The Court rejected that approach, however, by holding that the jury can refuse to believe ***any part*** of the state's evidence.  *Id.* at 661.  The two approaches are antithetical and, as explained herein, *Williams* wisely rejected the former in favor of the latter.

[10]  The Court reaches this same conclusion in the companion case, *State v. Pierce*, ___ S.W.3d ___ (Mo. banc 2014) (No. SC93321).

15

Here, the differential element is whether the employee believed (subjectively, but reasonably) that the object Jackson held against her back throughout the robbery – and that he used or threatened to use to force her to do what he wanted – was a gun. No matter how strong, airtight, inescapable, or even absolutely certain the evidence and inferences in support of the differential element may seem to judges and lawyers, no evidence *ever* proves an element of a criminal case until all 12 jurors believe it, and no inference *ever* is drawn in a criminal case until all 12 jurors draw it. Accordingly, the evidence supported an instruction on robbery in the second degree.[11]

The temptation to violate this principle and refuse to instruct down – though plainly wrong – can be almost overpowering in some cases, especially when the evidence is so strong and the inferences are so obvious that giving a lesser included offense instruction seems almost to beg for jury nullification or compromise verdicts. A sure sign that a judge or court is about to yield to this temptation is a reference to what a "reasonable juror" in a criminal case must or must not find. For example, in *State v. Mease*, 842 S.W.2d 98 (Mo. banc 1992), the Court surveyed the state's extensive evidence of deliberation and held that "[n]o rational fact finder could conclude that the

---

[11] In *Pierce*, ___ S.W.3d ___, the Court applies this holding to a case in which the defendant was charged with second-degree trafficking and the trial court refused the defendant's request to instruct on the "nested" lesser offense of possession. The differential element, i.e., the element required for the trafficking charge but not for possession, is that the defendant possessed cocaine base weighing more than two grams. No matter how compelling (or even uncontested) the evidence may be on this element, it is for the jury – and only the jury – to decide whether the state proved that element beyond a reasonable doubt. Accordingly, it was error in *Pierce* for the trial court to refuse to instruct the jury on possession on the ground that a reasonable jury must believe this evidence and must find that differential element.

16

defendant committed this homicide but that he did not deliberate on the killing." *Id.* at 111.[12]

The temptation to deprive the jury of the right to disbelieve all or any part of the evidence, as this Court did in *Mease*, is neither new nor is it a weakness peculiar to this Court. Even luminaries of the judicial heavens have fallen prey to this temptation on occasion. For example, Justice Holmes once wrote:

> The judge cannot direct a verdict [in a criminal case] it is true, and the jury has the power to bring in a verdict in the teeth of both law and facts. But the judge always has the right and duty to tell them what the law is upon this or that state of facts that may be found, … and when there is no dispute he may say so although there has been no formal agreement. Perhaps there was a regrettable peremptoriness of tone – but the jury were allowed the technical right, if it can be called so, to decide against the law and the facts – and that is all there was left for them after the defendant and his witnesses took the stand. If the defendant suffered any wrong it was purely formal since, as we have said, on the facts admitted there was no doubt of his guilt.

*Horning v. D.C.*, 254 U.S. 135, 138-39 (1920). This uncharacteristic usurpation of the jury's role was noted at the time, *id.* at 139 (Brandeis, J., dissenting) (noting that the trial court's statement constituted a directed verdict in a criminal case and arguing that there is nothing "technical" about the jury's right to find the facts because it is only that finding

---

[12] Nor is *Mease* the only time that this Court has held what a jury in a criminal case was not allowed to find. *See, e.g., State v. Murray*, 744 S.W.2d 762, 774 (Mo. banc 1988) (defendant's theory of second-degree murder contradicted by the state's evidence); *State v. Amerson,* 518 S.W.2d 29, 33 (Mo.1975) (second-degree murder instruction not required when victim was killed while sitting peacefully by the street and defense was that defendant was not the killer); *State v. Parker,* 509 S.W.2d 67, 71 (Mo.1974) (second-degree murder instruction not required when victims were forced to lie on floor and then were shot and defense was that defendant was not the killer); *State v. Crow,* 486 S.W.2d 248, 254–55 (Mo.1972) (second-degree murder instruction not required when victim was bound and strangled and defense was that defendant was not killer); *State v. Holland,* 354 Mo. 527, 543, 189 S.W.2d 989, 998 (1945) (second-degree murder instruction not required when victims' headless bodies, which had two or three shotgun wounds each, were found in a lake and defense was that defendant was not killer).

17

that gives the government any right or power to punish), and history has adjudged it "an unfortunate anomaly in light of subsequent cases." *United States v. Gaudin*, 515 U.S. 506, 520 (1995).

It is the "universally accepted law of this state that a court in the trial of a criminal prosecution cannot direct the jury to return a verdict of guilty[.]" *State v. McNamara*, 110 S.W. 1067, 1071-72 (Mo. 1908).

> We have held that in criminal cases "no court in Missouri has the power or right to direct a verdict of guilty in the face of our constitutional guaranty of trial by jury, our statute forbidding the judge to sum up or comment on the evidence." In *State v. Buck*, *supra*, 25 S. W. 573, 577, the court said: "The presumption of innocence with which defendant is clothed, and never which shifts, ***rests with him throughout***, and, notwithstanding the *prima facie* case made out by the state, it must still go further. '***A prima facie case will not warrant a conviction***.'"

*State v. Shelby*, 64 S.W.2d 269, 275 (Mo. banc 1933) (emphasis added, citations omitted).

When a court decides what instructions to give the jury in a criminal case under section 556.046 based on what a reasonable juror must and must not find, or what a reasonable juror must and must not infer, it tacks far too close to the forbidden waters of directing a verdict in a criminal case. Here, the trial court concluded – and the state would have this Court hold – that the evidence was so compelling that the jury ***must believe*** that the employee saw something in Jackson's hand and ***must infer*** that she reasonably believed it was a gun. The effect of such a ruling, however, is the same as a directed verdict on the differential element.

18

In other words, there is no difference between: (a) rejecting a lesser included offense instruction on second-degree robbery and (b) giving only a second-degree robbery instruction but telling the jury that if it finds all of the elements of second-degree robbery, it must find Jackson guilty of *first-degree* robbery. If the latter is prohibited, so must the former be. *Santillan*, *Pond*, and *Williams* combine to hold that the jury's right to disbelieve all or any part of the evidence, and its right to refuse to draw any needed inference, is a sufficient basis in the evidence to justify giving any lesser included offense instruction when the offenses are separated only by one differential element for which the state bears the burden of proof. The Court reaffirms those holdings here.

*Santillan* holds that the defendant is not required to put on affirmative evidence to support the lesser offense or refute the greater. *Pond* and *Williams* hold that there is no requirement for such affirmative evidence regardless of who adduces it. Now, the Court holds expressly what *Pond* and *Williams* only may have implied: a defendant not only does not need to introduce affirmative evidence, he does not have to "cast doubt" over the state's evidence via cross-examination or explain to the judge or jury precisely how or why the jury can disbelieve that evidence and so acquit him of the greater offense and convict him of the lesser. To the extent *Olson* or any other case suggests otherwise, it no longer should be followed.

Finally, the Court does not accept the argument in the separate opinions that this holding does unnecessary violence to the language or intent of section 556.046. Even though the effect of this decision likely will be that lesser included offense instructions will be given virtually every time they are requested (and even though trial courts likely

19

will give such instructions even when ***not*** requested simply to avoid the possibility of post-conviction claims under *McNeal*), these particular clothes were missing from the emperor's wardrobe long before this case. This holding was implied (at least) in *Pond*, and it was stated expressly in *Williams*. Accordingly, the Court's decision in this case merely acknowledges what the rest of the villagers already have seen.

As noted at that outset, this decision is based solely on the language of section 556.046. But this statute must be applied in the context of the constitutional imperatives of the presumption of innocence and the right to a trial by jury. The holding in this case is faithful to the language of section 556.046 in that context. Unless there is a constitutional right to a lesser included offense instruction in non-capital cases, a question that the Court does not address here, statutory language eliminating such instructions in all such cases would seem to pose no drafting difficulty. But, to the extent that the purpose of section 556.046 is to make a lesser included offense instruction available in one first-degree robbery case but not another based on how strong or weak the trial judge believes the state's evidence to be, the language presently chosen to accomplish that goal fails for the reasons (and to the extent) set forth above. There simply is no way for this Court to construe the phrases "a basis in the evidence to acquit the defendant," § 556.046.3, or "a basis for a verdict acquitting the defendant," § 556.046.2, to achieve such an end without undermining the fundamental values embodied in the presumption of innocence and the right to a jury trial. Accordingly, until some other language is employed, the construction given here (and in *Williams*) to subsections 2 and 3 of section 556.046 is the best – and only – construction reasonably available.

20

## IV.    The Separate Opinions

The divide between the Court's holding and the positions taken in the separate opinions is narrow and easily stated: If the defendant requests that the jury be instructed on a lesser included offense consisting of all but one of the elements required for the greater offense, is the trial court allowed to refuse to give that instruction solely because it determines that no reasonable juror could refuse to find that the differential element had been proved beyond a reasonable doubt?  The answer is no.  Unless waived, the right to trial by jury means that the jury – and only the jury – will decide what the evidence does and does not prove beyond a reasonable doubt.

### A.    The Harm

Before debating the merits of this holding further, however, it seems both fair and reasonable to ask:  Where is the harm?  Even if the evidence is such that every reasonable juror must find the differential element proved beyond a reasonable doubt, where is the harm in giving the defendant the lesser included offense instruction he requests?

To isolate this harm, assume: (1) a defendant is charged with a crime consisting of three elements; (2) the defendant requests an instruction on a lesser included offense consisting only of the first two elements; (3) the jury will find that the first two elements have been proved; and (4) the evidence is such that every reasonable juror must find the third element has been proved.

If the jury in this case is "reasonable," i.e., if it finds element C proved as every reasonable juror must, it will convict the defendant of the greater offense whether the lesser included offense instruction is given or not.  Therefore, a lesser included offense

21

instruction will make a difference in this case only if the jury is "unreasonable" regarding the proof of element C, yet willing to convict the defendant of the lesser offense if given that option. This is the supposed harm that the separate opinions seek to prevent. But the alternative is unacceptable. It forces an unreasonable jury either:

A)  *to acquit* Defendant of the greater offense, or

B)  *to convict* him of a crime it believes (unreasonably, but genuinely) Defendant did not commit.

The Court perceives no harm in giving a lesser included offense instruction that allows the jury to convict a defendant of an offense that the evidence proves he committed and that the jury believes he committed. Instead, the harm comes from a rule that either: (A) allows the defendant to go free despite evidence that proves he committed a crime the jury was not allowed to consider, or (B) sends him to prison for a crime that the jury genuinely (though perhaps unreasonably) believes he did not commit.

That is harm enough, but it is not the only harm caused by the approach that the separate opinions champion. The question of whether the trial court will give a lesser included offense instruction cannot be answered until the very end of the trial, when the trial court sifts and weighs the evidence to determine which elements (if any) a reasonable juror must find. This means that the defendant must prepare and try his case never knowing for sure whether the trial court will give the lesser included offense instruction he wants. By acknowledging the effect of its prior decisions, the Court's holding in this case creates certainty that will benefit defendants and, ultimately, the state and the trial court as well.

22

## B.     The Arguments

The separate opinions want to have their cake and eat it too.  This Court has held that a "defendant is not required to put on affirmative evidence" to justify a requested lesser included instruction, *Santillan*, 948 S.W.2d at 576, and the jury "may believe or disbelieve all, part, or none of the testimony of any witness."  *Williams*, 313 S.W.3d at 660.[13]  The separate opinions are willing to follow these principles, but only to a point.

For example, the position taken in the separate opinions acknowledge that a "defendant has no obligation to put on affirmative evidence" to justify a requested lesser included instruction, but would accept the state's proposed limitation that the defendant still must put the differential element "in dispute" by impeaching the state's witnesses on that element, by making a "credible" argument that the state's proof of that element need not be believed, or by otherwise creating a "real question" as to whether this differential element was proved beyond a reasonable doubt.  This argument was rejected by this Court in *Pond* and *Williams*.

By the same token, the Court has rejected the idea that the jury "may believe or disbelieve all, part, or none of the testimony of any witness,"but only if it believes all of the evidence that a reasonable juror must believe and does not believe any of the evidence that a reasonable juror must disbelieve.  The question of whether the evidence is

---

[13]   The separate opinions rely on the fact that *Williams* quoted "reasonable juror" language and argue that the evidence there was such that reasonable jurors could disagree about the differential element.  Whether the Court could have come to such a conclusion is debatable, but what is clear is that the Court did not do so.  The basis for the holding in *Williams* is that the jury is entitled to believe all, part or none of the evidence, not that such belief or disbelief was (or was not) reasonable.

23

sufficient (i.e., whether a jury *may* find guilt beyond a reasonable doubt) is a proper question for trial and appellate courts, but the question of what the jury *must* find has no place in a criminal trial or appeal.

This Court serves the criminal justice system best when it says what it means and means what it says. Accordingly, the Court should not continue to articulate the foregoing principles in *Santillan* and *Williams* on the one hand and, on the other, continue to suggest that a requested lesser included offense instruction need not be given if the trial court finds that all reasonable jurors must find that the differential element was proved. It is unfair to the trial court that makes its decision on the basis of the latter, only to be reversed on the basis of the former. And it is unfair to the defendant who must go through a second trial just to get the instructions he should have gotten in the first.

For these reasons, the Court's holding acknowledges what most of the villagers already have seen, i.e., that the emperor's wardrobe is more imaginary than real. When a defendant requests an instruction for a lesser included offense that consists of a subset of the elements of the charged offense, that instruction must be given. This is not a new holding but, because the state persists in insisting that the emperor is well-clothed, the Court here underscores its holdings in *Pond* and *Williams*.

## C.     *No Basis to Convict of the Lesser Offense*

The implication in the state's arguments and the separate opinions is that the Court's holding will give the jury an opportunity to convict the defendant of a crime for which there is no basis in the record to find him guilty. This is incorrect.

24

When dealing with "nested" lesser included offenses (i.e., those comprised of a subset of the elements of the charged offense), "it is **impossible to commit** the greater without **necessarily committing** the lesser." *Derenzy*, 89 S.W.3d 472, 474 (Mo. banc 2002) (emphasis added). *See also State v. Harris*, 620 S.W.2d 349, 355 (Mo. banc 1981) ("it is impossible to commit the greater [offense] without first committing the lesser"). For example, second-degree robbery requires the state to prove beyond a reasonable doubt that the defendant took the victim's property by force.

First-degree robbery requires proof of those same elements **and** proof beyond a reasonable doubt of the differential element that the victim reasonably believed the defendant was using or threatening to use a weapon. By definition, therefore, if the evidence in a specific case is sufficient to allow a reasonable juror to find the defendant guilty of robbery first, that evidence also must be sufficient to allow a reasonable juror to find the defendant guilty of robbery second.

The error in the contention that the Court's holding allows a jury to convict a defendant of a lesser offense that is not supported by the evidence can result only from a concatenation of three logical missteps: (1) it treats a sufficiency analysis (i.e., determining what a reasonable juror *may* find) like a directed verdict analysis (i.e., determining what a reasonable juror *must* find); (2) it makes the lack of the differential element in the lesser offense into an element of that offense (e.g., if "weapon" is an element of robbery first, then "no weapon" must be an element of robbery second); and (3) it converts this new element into an affirmative defense. Only by adding all three of these together is it possible to reach the erroneous conclusion that giving a lesser included

offense instruction allows the jury to convict the defendant of a crime for which there is no basis in the record to find him guilty.

Here, there is sufficient evidence for a reasonable juror to find that Jackson stole the victim's property by force (i.e., that he committed second-degree robbery), even if the video confirmed beyond any question that he was carrying a gun. In fact, this would still be true even if the video showed – and four unimpeachable eyewitnesses confirmed – that Jackson was carrying a bazooka and a machete. This is because whether the defendant was or was not armed is irrelevant for purpose of the elements of second-degree robbery.

The same is true in the companion case, *Pierce*. No matter how compelling the evidence in *Pierce* was – or was not – concerning whether the cocaine base in the defendant's possession weighed more than two – or 2,000 – grams, the evidence in that case had to be sufficient to convict Pierce of possession (for which weight is not an element) because the evidence was sufficient to prove second-degree trafficking (for which proof that the substance weighed two grams or more is required). *Pierce*, __ S.W.3d at __ (slip op. at 12). In other words, the jury ***did not*** have to find that the defendant possessed less than two grams of that substance in order to convict him of the "nested" lesser offense of possession; it could convict him of that crime without deciding (or even considering) how much the substance weighed. By the same token, the jury in this case ***did not*** have to find that Jackson was unarmed in order to convict him of the "nested" lesser offense of second-degree robbery; it could convict him of that crime without ever considering or deciding that question. By definition, therefore, a "nested" lesser offense omits – it does not negate – the differential element.

26

Accordingly, the holding in this case ***does not*** allow a jury to convict a defendant of a crime for which he has not been proven guilty. Any evidence that is sufficient to prove the elements of the charged offense must necessarily be sufficient to prove a crime that is comprised of a subset of those same elements, i.e., a "nested" lesser offense.

### D.  *Putting the Differential Element "In Dispute"*

Though the state concedes that, under *Santillan*, the defendant cannot be denied a lesser included offense instruction on the basis that he failed to introduce affirmative evidence negating the differential element, the separate opinions would replace this unlawful – but at least workable – standard with an amorphous standard that is both unlawful and unworkable. The Court rejects the assertion that it should hold that a defendant is not entitled to a lesser included offense instruction unless and until he puts the differential element "in dispute," especially as the proponents of this approach fail to provide even vague guidance as to how a defendant can meet this new requirement. Moreover, the Court refuses any approach that would borrow from ***civil*** cases on summary judgments or directed verdicts to determine when a criminal defendant has done enough to put an element on which the state bears the burden of proof "in dispute."

This Court has long been faithful to the basic principle that entering a plea of "not guilty" is all that a defendant needs to do to put the government to its proof on every element of the crime. *State v. Moore*, 435 S.W.2d 8, 11-12 (Mo. banc 1968) ("It must be remembered, however, that the defendant here entered a plea of not guilty which puts in issue all facts constituting" the crime and the defendant's guilt); *State v. Shawley*, 67 S.W.2d 74, 83 (Mo. 1933) ("Defendant's plea of 'not guilty' put in issue every allegation

27

of the indictment, and, if the prosecutor had failed to prove the killing, defendant would have been entitled to an acquittal.") (quoting *State v. Winter*, 34 N. W. 475, 478 (Iowa 1887)).

As explained herein, any attempt to narrow this principle so that a plea of "not guilty" only puts "in dispute" those elements that the trial court (or an appellate court on *de novo* review) believes reasonable jurors can disagree about comes dangerously close to denying the defendant the fair trial to which he is entitled under the state and federal constitutions.[14]

### E.    Federal Cases

This case is about the application of a Missouri statute to Missouri prosecutions in Missouri courts. Even so, the separate opinions cite to federal court decisions that supposedly preclude the Court's holding. Yet none of these cases reject the principles underlying the Court's holding.

Some of the federal cases relied upon are constitutional reviews of state court prosecutions in which the state's law governing lesser included offense instructions bear no resemblance to section 556.046.2. For example, in *Beck v. Alabama*, 447 U.S. 625 (1980), the Alabama capital murder statute prohibited the trial court from giving a lesser

_____

[14]    Nor is there any basis for claiming that the Court's holding in this case imperils the defendant's state or federal due process rights. As noted from the outset, this case and the Court's holding are limited to trials in which the defendant timely requests an instruction on a "nested' lesser included offense. Obviously, there can be no due process violation in granting a defendant's own request. Using constitutional precedents meant to protect defendants cannot justify a new rule that requires a defendant to do more than plead not guilty before giving him the full benefit of the presumption of innocence and imposing on the state the full burden of persuading the jury that it has proved each element beyond a reasonable doubt.

included offense instruction in any case. The Supreme Court rejected this attempt to force the jury to choose between convicting the defendant of the charged crime (with its mandatory penalty) or allowing the defendant to walk free. *Id.* at 634 (noting lesser included offense instructions are a vital party of "ensur[ing] that the jury will accord the defendant the full benefit of the reasonable-doubt standard").[15] This is the principle that this Court's holding vindicates in this case.[16]

In *Roberts v. Louisiana*, 428 U.S. 325, 333 (1976) (plurality opinion), the Court declared Louisiana's first-degree murder statute unconstitutional because it mandated a death sentence for anyone found guilty of any of five categories of killings. In reaching this conclusion, the Court rejected the state's argument that the legislature can overcome the "constitutional vice of mandatory death sentence statutes" simply by requiring the trial court in every case to instruct the jury on all lesser included forms of homicide. The Court rejected "such an approach [because it] makes the jurors' power to avoid the death penalty dependent on their willingness to accept this invitation to disregard the trial

---

[15]  In *Hopper v. Evans*, 456 U.S. 605 (1982), the Court denied habeas relief to a state prisoner on the grounds that *Beck* did not recognize a general due process right to lesser included offense instructions in state court and that relief was not merited when, under state law, the defendant would not have been entitled to such an instruction even in a non-capital case. *Id*. at 612. *But see Keeble v. United States*, 412 U.S. 205, 213 (1973) (noting "while we have never explicitly held that the Due Process Clause of the Fifth Amendment guarantees the right of a defendant to have the jury instructed on a lesser included offense, it is nevertheless clear that a construction of the Major Crimes Act to preclude such an instruction would raise difficult constitutional questions"). Accordingly, the Supreme Court has not yet recognized a constitutional right to lesser included offense instructions, nor does this Court do so here.

[16]  This Court's willingness to invade the jury's province typified in *Mease* and the other cases cited in the separate opinions decreased markedly after *Beck,* and the Court's holding here merely extends the same certainty to non-capital cases in which a defendant seeks an instruction on a "nested" lesser included offense.

29

judge's instructions" to find the defendant guilty of a lesser included offense even though it believed beyond a reasonable doubt that the defendant committed all of the elements of the charged offense. *Id.* at 335.

The other cited federal cases are even less relevant. Unlike Missouri practice under section 554.046.2, federal court decisions regarding lesser included offense instructions are not persuasive because their practice is not the result of a statute (let alone one similar to section 554.046.2). Instead, it is governed entirely by decisional law. *See* Fed. R. Crim Proc. Rule 31(c) (defining lesser included offenses without addressing when instructions of such must be given).

For example, the separate opinions rely heavily on language from *Keeble v. United States*, 412 U.S. 205 (1973), and *Sansone v. United States*, 380 U.S. 343, 350 (1965). The former does not help their argument, however, and the latter actually hurts it. In *Keeble*, the Supreme Court rejected the government's argument that Congress intended to deprive defendants of the general rule in federal courts (i.e., allowing lesser included offense instructions when supported by the evidence) in prosecutions on Indian lands, but it did not address whether the defendant was entitled to such an instruction. *Keeble*, 412 U.S. at 213 (noting that any attempt to preclude the availability of a lesser included offense instruction in an entire category of cases would be constitutionally suspect).

In *Sansone*, the Supreme Court returned to its rationale that overuse of lesser included offense instructions could permit juries to "pick between the felony and the misdemeanor so as to determine the punishment to be imposed, a duty Congress has traditionally left to the judge." *Sansone*, 380 U.S. at 350. This is significant here

30

because it shows that the distrust of juries inherent in the "rational juror" threshold urged by the separate opinions is far more appropriate in federal courts where sentencing is determined solely by the judge, than it is in Missouri where the legislature preserves a significant role for the jury in sentencing first-time offenders.

For these reasons, the quoted federal cases do not provide a sufficient basis for the Court to close its eyes to the meaning of its prior holdings in *Santillan*, *Pond*, and *Williams*. Moreover, the use of these federal cases leaves the impression that federal courts are ready and willing to use this issue to usurp the jury's role. If true, this still would not justify this Court in doing the same. But, more important, this is not a true portrait of these issues in the federal courts.

The Supreme Court has stated repeatedly that criminal guilt is to be determined by the jury, not the judge, and that a court cannot usurp the jury's role simply because it finds that the evidence establishes an element beyond dispute:

> [I]n a jury trial the primary finders of fact are the jurors. Their overriding responsibility is to **stand between the accused and a potentially arbitrary or abusive Government** that is in command of the criminal sanction. For this reason, a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict, regardless of how overwhelmingly the evidence may point in that direction. The trial judge is thereby barred from **attempting to override or interfere with the jurors' independent judgment in a manner contrary to the interests of the accused**.

*United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572-73 (1977) (emphasis added) (citations omitted). *See also United Brotherhood of Carpenters & Joiners of Am. v. United States*, 330 U.S. 395, 410 (1947) ("No matter how clear the evidence, [defendants] are entitled to have the jury instructed in accordance with the standards

31

which Congress has prescribed.  To repeat, *guilt is determined by the jury, not the court*.") (emphasis added).

The Supreme Court explained with great force and eloquence why the jury's role extends to guilt and innocence and is not limited simply to resolving disputed questions of fact:

> The guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered.  A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government …. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge ….  Beyond this, the jury trial provisions in the Federal and State Constitutions reflect a fundamental decision about the exercise of official power – *a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges.*  Fear of unchecked power, so typical of our State and Federal Governments in other respects, found expression in the criminal law in this insistence upon community participation in the determination of guilt or innocence.

*Duncan v. State of Louisiana*, 391 U.S. 145, 155-56 (1968) (emphasis added).

The approach championed in the separate opinions violates these principles because it restricts the jury's decision-making only to questions that a court believes are fairly debatable among "reasonable jurors."  Federal courts do not condone this, even when the evidence is overwhelming or uncontradicted.

> The presumption of innocence to which appellant was entitled demanded that all factual elements of the government's case be submitted to the jury.  It is immaterial that the government's evidence as to the actual theft was uncontradicted.  The acceptance of such evidence and the credibility of witnesses is for the jury, *even though to the court the only possible reasonable result is the acceptance and belief of the government's evidence*.  A partial direction of the verdict occurs when the court determines an essential fact, and this denies the appellant trial by jury.

32

*United States v. Manuszak*, 234 F.2d 421, 424-25 (3d Cir. 1956) (emphasis added). *See also United States v. Muse*, 83 F.3d 672, 679-80 (4th Cir. 1996) ("Although a fact stipulation may have the effect of providing proof beyond a reasonable doubt of the existence of the facts that make up an element, a conviction is not valid unless a *jury* considers the stipulation and returns a guilty verdict based on its finding that the government proved the elements of the crime beyond a reasonable doubt …. [and the] court may not by-pass the jury and enter its own finding that the element has been established.").

It is not for this Court to tell the federal courts that these essential principles cannot be reconciled with a "reasonable juror" gateway to a defendant's request for a lesser included instruction on a "nested" lesser offense. But the Court can – and here does – abandon such inconsistency in its own practice.

### F.      Model Penal Code Statutes and Cases

Even less persuasive than these federal court cases is the reliance placed on how the model penal code addresses the use of lesser included offense instructions in states that have adopted that approach. The model penal code provided:

> The Court shall not be obligated to charge the jury with respect to an included offense *unless there is a rational basis* for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

ALI Model Penal Code at § 1.07(5) (1962) (emphasis added).

Missouri explicitly rejected the model penal code on this point. Section 556.046.2 predates the model penal code and requires only "a basis," not "a rational basis." By

33

refusing to change section 556.046.2 when it adopted much of the remainder of the model penal code, the legislature rejected this "rational basis" approach. *See* Comments to Missouri Criminal Code, p. 1-5, § 1.090 (1973). This Court cannot amend the statute now to adopt the model penal code approach that the legislature considered and rejected.

For all these reasons, the separate opinions fail to justify an approach that authorizes (if not actually encourages) courts to invade the jury's province and usurp its role as the final arbiter of a defendant's guilt. Presented as a defense of the *status quo*, their approach seeks to avoid the unavoidable consequences of the principles that this Court recognized and protected in *Santillan*, *Pond*, and *Williams*. As a result, that approach would be a backward step, and the Court's holding in this case moves Missouri practice toward greater certainty, fewer retrials, and renewed faith in the jury system.

## V. *Conclusion*

For the reasons stated above, Jackson's judgment of conviction is vacated both as to the first-degree robbery count and, because the jury's verdict on the armed criminal action count was predicated on its verdict regarding first-degree robbery, the armed criminal action count as well.[17] The case is remanded.

                                           _____

                                          Paul C. Wilson, Judge

Russell, C.J., Fischer and Teitelman, JJ., concur; Stith, J., concurs in part and dissents in part in separate opinion filed; Breckenridge, J., concurs in opinion of Stith, J.; Draper, J., dissents in separate opinion filed; Stith, J., concurs in opinion of Draper, J.

---

[17] Because Jackson's convictions are vacated and the case is remanded on the grounds discussed above, the Court does not reach or address Jackson's claims relating to the sufficiency of the transcript in this appeal.



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,       )
      )
           **Respondent,**       )
      )
           **v.**       )       **No. SC93108**
      )
DENFORD JACKSON,       )
      )
           **Appellant.**       )

## OPINION CONCURRING IN PART AND DISSENTING IN PART

I concur with the result the principal opinion reaches, but I disagree entirely with the principal opinion's holding that a trial court always must submit a lesser included offense instruction if requested to do so by a party. The principal opinion intentionally leaves vague the source of that requirement. In places, it implies that this obligation is inherent in the right to jury trial, yet it never says that a court's refusal to instruct down violates a defendant's right to jury trial. It could not do so, for, as discussed in Section II below, the United States Supreme Court has made it clear that the right to jury trial does not bar the courts from limiting lesser included offense instructions to those that a reasonable juror could find supported by the evidence. Rather, the United States Supreme Court has said that submitting unsupported lesser included offenses invites arbitrary decision making and, therefore, itself invites due process scrutiny.

In other places, the principal opinion suggests that lesser included offense instructions are required by statute. Yet the governing Missouri statute, section 556.046.2, RSMo 2000,[1] provides exactly to the contrary, stating that a trial court is obligated to instruct down "*only* if there is a basis in the evidence for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for convicting the defendant of that particular included offense" (emphasis added). *See also § 556.046.3, RSMo Supp. 2013*. The principal opinion is in conflict with these statutory standards.

In yet other places, the principal opinion suggests its result necessarily follows from this Court's prior recognition that a defendant need not put on affirmative evidence to support a request for a lesser included offense instruction. In so stating, the principal opinion simply ignores, and *sub silencio* overrules, key portions of the principal case it relies on, *State v. Williams*, 313 S.W.3d 656, 660 (Mo. banc 2010). *Williams*, while reaffirming that affirmative evidence is not required, also expressly reaffirms Missouri's well-established standard that an instruction down is required only when "a reasonable juror could draw inferences from the evidence presented that an essential element of the greater offense has not been established." *Id.* As discussed in detail below, this is also the standard followed by the United States Supreme Court and by 47 of our 49 fellow states. It is the standard this Court should continue to follow.

Not even defendant Denford Jackson asked this Court to reject its long-standing rule and hold that lesser included offense instructions must be submitted even if a

---

[1] All statutory references are to RSMo 2000 unless otherwise noted.

reasonable juror could not find them to be supported. The principal opinion created an issue where there was none. It then nullified a statute and overruled this Court's precedent without the benefit of argument or briefing. Principles of due process and separation of powers counsel against such activism.

**I.    A TRIAL COURT MAY SUBMIT A LESSER INCLUDED OFFENSE INSTRUCTION ONLY IF THERE IS A BASIS IN THE EVIDENCE SUPPORTING THAT INSTRUCTION**

Section 556.046.2 specifies when a trial court must or must not instruct down. It provides in relevant part:

> The court *shall not be obligated to charge the jury* with respect to an included offense *unless there is a basis* for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

*§ 556.046.2* (emphasis added). This Court repeatedly has held this means that, "[i]f a reasonable juror could draw inferences from the evidence presented that an essential element of the greater offense has not been established, the trial court should instruct down." *Williams, 313 S.W.3d at 660, quoting State v. Derenzy, 89 S.W.3d 472, 474 (Mo. banc 2002).*

Contrary to this well-established understanding, the principal opinion here and the companion case *State v. Pierce, --- S.W.3d --- (Mo. banc 2014)*, hold that a court always must instruct down if requested. This holding undermines the trial court's exclusive authority to declare the law and requires this Court to overrule more than 15 years of its own precedent and to nullify the effect of two validly enacted statutes.

3

### A. The Trial Court's Authority to Instruct the Jury

The principal opinion states that this is the result required by the rule that the jury has the right to believe or disbelieve all or any part of the evidence. To be sure, this Court long has held that a trial court must consider the jury's ability to believe or disbelieve any and all evidence when the court determines whether there is a basis *in the evidence* for a reasonable jury to acquit the defendant of the charged offense and convict him of the lesser offense. *See, e.g., Williams, 313 S.W.3d at 660.* But the principal opinion improperly manipulates this truism to reach a conclusion never before reached by any other Missouri case – that the corollary of this rule is that, even if no reasonable juror could find that facts on which a lesser included offense instruction would be premised, the fact that "[a]ll decisions as to what evidence the jury must believe and what inferences the jury must draw are left to the jury" means that a lesser included offense instruction must be given in every case if requested.

The principal opinion is unable to cite any direct authority for this, as no case has ever so held, and for good reason. Its logic confuses questions of law with questions of fact. The jury's right to find facts cannot shape the trial court's declaration of law. Indeed, it is fundamental to our criminal law system that the court's function is to declare the law and the jury's function is to apply the law. *United States v. Gaudin, 515 U.S. 506, 513 (1995); Sparf v. United States, 156 U.S. 51, 102 (1895).*

As the United States Supreme Court notes in *Sparf*, "It is true, the jury may disregard the instructions of the court, and in some cases there may be no remedy. *But it is still the right of the court to instruct the jury on the law, and the duty of the jury to obey*

4

*the instructions*." *156 U.S. at 72* (emphasis added). In other words, the jury's function and the court's function are different; that the jury has the power to disregard the law does not deprive the court of its fundamental authority to declare and instruct on the law.

By mandating courts instruct the jury on a lesser included offense whenever a party so requests, the principal opinion effectively strips courts of their authority to declare the law in these circumstances. This is wrong, for "the judge always has the right and duty to tell [the jury] what the law is upon this or that state of facts." *Horning v. District of Columbia, 254 U.S. 135, 138 (1920), abrogated on other grounds as recognized by Gaudin, 515 U.S. at 520.*

Exercising this authority, the Supreme Court holds that an "independent prerequisite for a lesser included offense instruction [is] that the evidence at trial must be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater." *Schmuck v. United States, 489 U.S. 705, 720 n.8 (1989); see also Keeble v. United States, 412 U.S. 205, 208 (1973)* ("[T]he defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater").

For this reason, the Supreme Court expressly has disapproved of state laws that require a trial court to instruct down when there "is not a scintilla of evidence to support the lesser verdicts." *Roberts v. Louisiana, 428 U.S. 325, 334 (1976)* (plurality opinion). The Supreme Court also admonishes that "[a] lesser included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for a conviction of the lesser-included offense." *Sansone v.*

*United States, 380 U.S. 343, 349-50 (1965).* Not surprisingly, in light of this wealth of Supreme Court cases, every state except Iowa and Florida requires a basis in the evidence for a court to be obligated to instruct down. *See infra, Section I(D).*

Nonetheless, without a supporting citation, the principal opinion states that a trial court's refusal to instruct down where a party has so requested amounts to impermissibly directing a verdict against the defendant. From this, the principal opinion concludes that, by refusing to instruct down, a trial court violates the defendant's right to have his guilt determined by a jury. It does so even though the United States Supreme Court expressly rejected this argument in *Sparf*, *156 U.S. at 102-03, 105-07*. *Sparf* recognized a trial court's authority to decide as a matter of law whether to instruct down and held that the trial court did not err in refusing a request to instruct down. Relying on *Sparf*, at least two other states directly have rejected the argument that a court's refusal to instruct down constitutes a directed verdict. *People v. Prince, 40 Cal. 4th 1179, 1269-70 (Cal. 2007); Hartley v. State, 653 P.2d 1052, 1055 (Alaska App. 1982).*

The principal opinion's mistake results from its misunderstanding of the import of the admonition in *Williams*, *State v. Pond, 131 S.W.3d 792 (Mo. banc 2004)*, and other cases that the jury can believe or disbelieve any and all evidence. Of course it can. But, just as it is the jury's role to decide what it believes, it is still the judge's duty to decide what instructions to give based on which instructions are supported by the evidence. In so determining, there need not be affirmative evidence to support a proposition necessary to acquit of the greater and convict of the lesser offenses. Neither, however, must a court submit issues untied to the evidence in the case or based on the jury's admitted ability to

6

engage in "jury nullification" – that is, to acquit arbitrarily. The admonition that "[t]he jury is permitted to draw such reasonable inferences from the evidence as the evidence will permit and may believe or disbelieve all, part, or none of the testimony of any witness" is part of the test that the trial court must consider when assessing the reasonable inferences the evidence supports. *See, e.g., State v. Hineman, 14 S.W.3d 924, 927-28 (Mo. banc 1999)* (invoking this rule when evaluating reasonable inferences from the evidence). It permits the court to make a more nuanced assessment of what a reasonable juror could or could not infer by recognizing that "[a] jury may accept part of a witness's testimony, but disbelieve other parts." *Williams, 313 S.W.3d at 660, quoting Pond, 131 S.W.3d at 794*. This allows a court to instruct down in situations such as when the state's witness testifies to one set of facts that supports conviction of the charged offense and the defense's witness testifies to a different set of facts that supports acquittal of the charged offense. But the judge still must determine what offenses the evidence supports, for, as *Sparf* states, "If the jury were to be made judges of the law as well as of fact, parties would be always liable to suffer from an arbitrary decision." *156 U.S. at 96*. Consequently, "The lesser-included offense charge is not required simply because the jury could exercise its power of acquitting on the greater charge for no reason at all." *United States v. Tsanas, 572 F.2d 340, 343 (2d Cir. 1978)*.

In *Pond*, for example, this Court reversed the trial court's refusal to instruct on the lesser offense of child molestation where the defendant was charged with statutory sodomy. *131 S.W.3d at 793*. At trial, the victim testified that the defendant penetrated her, but on cross-examination, her testimony indicated the defendant inappropriately

touched her but did not penetrate her. *Id. at 794*. This Court concluded that the trial court should have submitted the lesser offense because "the jury could have found touching, and not penetration. The jury could have believed part of the victim's testimony, that defendant touched her, and disbelieved that defendant penetrated her." *Id.* (internal quotation omitted). Because the Court could account for the jury's ability to believe part of the victim's testimony on direct examination as well as her testimony on cross, it was able to reach this holding and instruct that the trial court should have submitted the lesser included offense.

It is its confusion of the roles of the court and the jury that leads the principal opinion to reach its unprecedented holding in the face of authority from the United States Supreme Court and nearly every state court. Because the language that the jury always can believe or disbelieve any and all evidence pertains to the trial court's evaluation of whether evidence supports instructing down, not the jury's right to find facts, it does not invoke the rule the principal opinion cites that "evidence never proves or disproves any element until the jury says so." Accordingly, a trial court's authority to refuse to instruct down does not impinge on the defendant's right to trial by jury.[2] This unsupported leap

---

[2] An analogy to cases discussing a court's review of the sufficiency of the evidence may prove helpful. A sufficiency of the evidence analysis requires a court to determine "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia, 443 U.S. 307, 318 (1979)*. In *Jackson*, the Supreme Court holds that, in determining the sufficiency of the evidence, "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Id. at 319* (emphasis added). The "rational trier of fact" standard, *Jackson* explains, is permissible because it "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due

8

is not the principal opinion's lone misstep, however, as the principal opinion's holding

also defies Missouri's statutory and common law.

> ### B. Missouri Statutes Require Trial Courts to Instruct Down Only When There Is a Basis in the Evidence to Do So

Section 556.046.2 provides in relevant part:

> The court *shall not be obligated to charge the jury* with respect to an included offense *unless there is a basis* for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

*§ 556.046.2* (emphasis added). The legislature amended section 556.046 in 2001 to

include subsection (3). It states:

> The court shall be obligated to instruct the jury with respect to a particular included offense *only if there is a basis in the evidence* for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for convicting the defendant of that particular included offense.

*§ 556.046.3, RSMo Supp. 2013* (emphasis added).

The principal opinion correctly states that these statutes mean that a trial court is

obligated to instruct down when the following requirements are met:

a.   a party timely requests the instruction;

b.   there is a basis in the evidence for acquitting the defendant of the charged offense; and

c.   there is a basis in the evidence for convicting the defendant of the lesser included offense for which the instruction is requested.

---

process of law." That is, a court's authority when reviewing the sufficiency of the evidence to determine what fact a jury can and cannot find based on the reasonable juror standard does not impermissibly infringe on the jury's ability to believe or disbelieve any or all of the evidence.

The principal opinion then goes on to conclude that because the jury can believe any and all evidence, there is always a basis in the evidence, so these requirements always are satisfied if a timely request is made. This interpretation guts sections 556.046.2 and 556.046.3 of their express requirements that a trial court is obligated to instruct down only in limited circumstances. The principal opinion's reasoning renders the requirement that there be a basis in the evidence mere surplusage, thereby nullifying it and overruling an entire line of case law giving meaning to this statutory requirement. *See, e.g., Williams, 313 S.W.3d at 660* (holding that "the evidence provided a basis for the jury to acquit [the defendant] of robbery in the second degree and convict him of felony stealing.").[3] Moreover, in writing this express requirement out of existence, the principal opinion transgresses well-established rules of statutory construction and separation of powers, which require that courts avoid interpreting statutes in a way that renders their language meaningless or unreasonable. *See Am. Fed'n of Teachers v. Ledbetter, 387 S.W.3d 360, 363 (Mo. banc 2012).* This is precisely what the principal opinion has done in interpreting the statutory requirement as always being satisfied when the statute expressly states that it is satisfied only under certain conditions.

---

[3] *See also, e.g., Pond, 132 S.W.3d at 794* ("In order for there to be a basis for an acquittal of the greater offense, there must be some evidence that an essential element of the greater offense is lacking and the element that is lacking must be the basis for acquittal of the greater offense and the conviction of the lesser."); *State v. Santillan, 948 S.W.2d 574, 576 (Mo. banc 1997)* ("If a reasonable juror could draw inferences from the evidence presented that the defendant did not deliberate, the trial court should instruct down.").

This Court repeatedly has identified the proper approach to construing a statute. "In determining legislative intent, this Court [should consider] the language of the statute and words employed in their plain and ordinary meaning." *Finnegan v. Old Republic Title Co. of St. Louis, Inc., 246 S.W.3d 928, 930 (Mo. banc 2008); accord Goerlitz v. City of Maryville, 333 S.W.3d 450, 455 (Mo. banc 2011), quoting Parktown Imports, Inc. v. Audi of America, Inc., 278 S.W.3d 670, 672 (Mo. banc 2009).* "Where the language is clear and unambiguous, there is no room for construction." *Hyde Park Hous. Partnership v. Dir. of Revenue, 850 S.W.2d 82, 84 (Mo. banc 1993).* "It is presumed that the legislature intended that every word, clause, sentence, and provision of a statute have effect." *Turner v. Sch. Dist. of Clayton, 318 S.W.3d 660, 673 (Mo. banc 2010)* (Breckenridge, J., concurring).

Applying these principles here, there is no room for statutory construction. The plain meaning of sections 556.046.2 and 556.046.3 is indisputable: a trial court is required to instruct down only when there is a *basis in the evidence* for so doing. And, as discussed above in subsection A, the rule that a jury may believe or disbelieve any and all evidence does not mean there is always a basis in the evidence to support the trial court's determination that the jury reasonably could acquit the defendant of the charged offense and convict him of the lesser offense.

The practical consequences of the principal opinion's new rule highlight its incompatibility with the plain meaning of section 556.046. Take, for example, a situation in which the defendant is charged with armed robbery, and the evidence, including a surveillance video, indisputably shows that the robber carried a large firearm when he

11

committed the robbery. The defendant denies that he was the person who committed the robbery but does not contest that the robber used a firearm. He requests a lesser included instruction on unarmed robbery.

As this Court's traditional interpretation of section 556.046.2 entitles a party to a lesser included offense instruction only if there is a basis for a verdict (1) acquitting the defendant of the charged offense and (2) convicting him of the lesser offense, the trial court would not be required to instruct down because there is no basis to convict the defendant of unarmed robbery. That is because there is no dispute that an armed robbery occurred; the only dispute is whether the defendant was the robber. Consequently, there may be a basis to acquit the defendant of the greater offense, but, if so, there can be no basis to convict him of the lesser offense: he either is guilty of armed robbery or innocent of any crime. Indeed, this Court and the court of appeals have reached this same conclusion under parallel circumstances. *See, e.g., State v. Amerson, 518 S.W.2d 29, 33 (Mo. 1975)* (holding the trial court properly refused to instruct on second-degree murder when the crime was either "a cold-blooded and wholly unprovoked murder" or "the accused was guilty of no crime at all" because another committed the act).[4] This is the result that a plain meaning interpretation of sections 556.046.2 and 556.046.3 requires. Yet, under the principal opinion's holding, a trial court nonetheless would be required to instruct the jury on unarmed robbery.

---

[4] This Court reached the same conclusion on similar circumstances in *State v. Mease, 842 S.W.2d 98, 112 (Mo. banc 1992)*. *See also State v. Lowe, 318 S.W.3d 812, 822 (Mo. App. 2010)*.

12

This is precisely the arbitrary decision-making the United States Supreme Court sought to avoid when it approved a trial court's refusal to instruct down in *Sparf, 156 U.S. at 63-64, 102-03*. As explained by Professor Wayne LaFave, for the trial court to give such a charge under those circumstances "is inappropriately to invite the jury to exercise a degree of mercy by finding defendant guilty of a lesser crime, when the proof truly justified conviction as charged." *6 Wayne LaFave, Criminal Procedure § 24.8(f), 503 (3d ed. 2007)*. Similarly, the Supreme Court long has held that "it is clearly error in a court to charge the jury upon a supposed or conjectural state of facts, of which no evidence has been offered." *United States v. Breitling, 61 U.S. 252, 254 (1857); Quercia v. United States, 289 U.S. 466, 470 (1933)* (additional citation omitted). Indeed, "due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." *Hopper v. Evans, 456 U.S. 605, 611 (1982)* (emphasis original).

By their terms, therefore, sections 556.046.2 and 556.046.3 provide that a trial court need not instruct down unless there is a basis in the evidence.

### C.     *Prior Missouri Cases Require a Trial Court to Instruct Down Only When There Is a Basis in the Evidence to Do So*

The principal opinion justifies its holding by stating it is required by prior case law. The principal opinion claims that it is merely reaffirming the holdings of cases like *Williams* and *Pond*. *Williams*, the primary authority on which the principal opinion relies, is the latest in the line of this Court's lesser included offense instruction cases. And, like its predecessors, *Williams* does *not* state that a court must instruct down

13

whenever so requested. To the contrary, it reaffirms the well-established rule that a party's entitlement to a lesser included offense instruction under section 556.046.2 is determined by whether "*a reasonable juror* could draw inferences from the evidence presented that an essential element of the greater offense has not been established." *313 S.W.3d at 660* (emphasis added). Had *Williams* adopted the rule espoused by the principal opinion that a party always is entitled to a lesser included offense instruction, it would not have gone on to analyze the evidence and base its holding on its conclusion that "the evidence provided a basis for the jury to acquit [the defendant] of robbery in the second degree and convict him of felony stealing." Nowhere does *Williams* hold that a court always must instruct down if a party so requests. That just is not Missouri law.

Rather, this Court long has held that, when determining "whether there is a basis to acquit of the offense charged and convict of the included offense, the trial court looks at the evidence." *State v. Hibler, 5 S.W.3d 147, 150 (Mo. banc 1999)*. And, "for there to be a basis for an acquittal of the greater offense, *there must be some evidence* that an essential element of the greater offense is lacking and the element that is lacking must be the basis for acquittal of the greater offense and the conviction of the lesser." *Pond, 131 S.W.3d at 794* (emphasis added). In other words, the differential element must be in dispute for a trial court to be obligated to instruct down. *See id.; see also Sansone, 380 U.S. at 349-50*.

The principal opinion also erroneously asserts that *Williams* "wisely rejected" an approach taken by prior opinions "that purport to decide what instructions to give based on what the court thinks a reasonable jury can and cannot refuse to believe." (Slip op. at

14

15 n.9). To repeat, *Williams* states: "If a reasonable juror could draw inferences from the evidence presented that an essential element of the greater offense has not been established, the trial court should instruct down." *313 S.W.3d at 660*. The inaccuracy of the principal opinion's characterization of *Williams* is self-evident. Just as *Williams* does not hold that a party always is entitled to an instruction down if it requests one, neither does it abandon the reasonable juror standard for determining when an instruction down is – and is not – warranted.

In fact, the reasonable juror standard is a cornerstone of this Court's lesser included offense instruction law. *See, e.g., Pond, 131 S.W.3d at 794* (holding that the defendant was entitled to a lesser included offense when discrepancies in the victim's statements to witnesses and her testimony at trial could have led a "reasonable jury [to] find the prior statements more believable")*; Derenzy, 89 S.W.3d at 474* ("If a reasonable juror could draw inferences from the evidence presented that an essential element of the greater offense has not been established, the trial court should instruct down")*; State v. Beeler, 12 S.W.3d 294, 300 (Mo. banc 2000)* ("[W]here the facts are such that no rational factfinder could conclude the defendant acted without deliberation, no second degree murder instruction is required")*; Hineman, 14 S.W.3d at 927* (same), *Hibler, 5 S.W.3d at 148* ("A reasonable jury could have believed that appellant did not attempt to kill the victim …. Therefore, there was a basis for acquitting appellant of first degree assault")*; State v. Yacub, 976 S.W.2d 452, 453 (Mo. banc 1998)* (applying rational juror standard)*; Santillan, 948 S.W.2d at 576* ("If a reasonable juror could draw inferences from the evidence presented that an essential element of the greater offense has not been

established, the trial court should instruct down"); *Mease, 842 S.W.2d 98, 112* (approving the trial court's refusal to instruct down in first-degree murder case when "the only reasonable conclusion" was that the defendant deliberately murdered the victim).

Despite its suggestions to the contrary, the principal opinions in this case and in *State v. Pierce* are the first to question the use of the reasonable juror standard. Each of the cases listed above holds that an evidentiary basis for acquittal of the charged offense and conviction of the lesser offense is a predicate requirement to instructing down. And the reasonable juror standard defines whether that basis is sufficiently established. To remove the reasonable juror standard from the analysis of whether a court properly refused to instruct down requires overruling *Williams* and each of these cases, which invokes *stare decisis*.

As this Court repeatedly has emphasized, "a decision of this Court should not be lightly overruled." *Eighty Hundred Clayton Corp. v. Dir. of Revenue, 111 S.W.3d 409, 411 n.3 (Mo. banc 2003)*. *Stare decisis* "promotes stability in the law by encouraging courts to adhere to precedents." *State v. Honeycutt, 421 S.W.3d 410, 422 (Mo. banc 2013), quoting Med. Shoppe Int'l, Inc. v. Dir. of Revenue, 156 S.W.3d 333, 334-35 (Mo. banc 2005)*. Moreover, "*stare decisis* is most essential regarding prior statutory interpretations because it is there that the rule of law and respect for the separation of powers meet." *Templemire v. W & M Welding, Inc., --- S.W.3d --- (Mo. banc 2014)* (Fischer, J., dissenting).

When, as in *Templemire*, the prior interpretation of the statute was inconsistent with the plain meaning of the statute, the rules of construction required this Court to

16

overrule its prior precedent, which improperly added words to the statute by judicial fiat rather than by legislative enactment. But here, the principal opinion's departure from this Court's previous interpretation of sections 556.046.2 and 556.046.3 without any directly supporting authority is precisely the type of action *stare decisis* is designed to restrain.

### D. Other Courts and Authorities Also Require a Basis in the Evidence from Which a Rational Juror Could Acquit the Defendant of the Charged Offense and Convict Him of the Lesser Offense

Review of federal and state law across the United States shows that the principal opinion's analysis deviates from the law applied by the United States Supreme Court, federal courts, and nearly every state court. Missouri's statutory requirement under sections 556.046.2 and 556.046.3 of a basis for a verdict acquitting the defendant of the greater offense and convicting him of the lesser is consistent with that taken by the United States Supreme Court, the vast majority of other states, and the Model Penal Code. As discussed in subsection A above, the United States Supreme Court holds that: "[T]he defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble, 412 U.S. at 208*. This means that a trial court must determine, as a threshold matter, whether there is a factual dispute as to the presence of the fact that distinguishes the greater and lesser offenses. As the Supreme Court stated in *Sansone, 380 U.S. at 349-50*, "[a] lesser included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for a conviction of the lesser-included offense." This is a logical corollary – indeed, it is the heart – of the requirement that there be a basis in the evidence to acquit

17

the defendant of the greater offense and convict him of the lesser. If there is no dispute as to the fact that differentiates the greater or lesser offenses, then a lesser included offense instruction should not be given because the factual issues to be resolved would be the same for both crimes, so there would be no additional issue for the jury's consideration that would require a separate instruction. *Id.; Berra v. United States, 351 U.S. 131, 134-35, (1956), superseded by statute on other grounds as recognized by Sansone, 360 U.S. at 348-49.*[5]

Turning to the law of our sister states, as the Supreme Court noted in *Beck v. Alabama, 447 U.S. 625, 636 n.12 (1980)*, most state courts also "agree that [a lesser included offense] must be given when supported by the evidence." Courts may vary as to whether that basis must consist of affirmative evidence or whether, as in Missouri, mere inference or impeachment of credibility is sufficient to raise a factual issue. But, if the evidence does not raise a question as to the existence of the determinative fact, then, these cases say, there is no basis in the evidence for a rational juror to acquit of the greater and convict of the lesser.

Numerous states, like Wisconsin, follow the same approach Missouri traditionally has and do not require affirmative evidence to support an instruction down. For instance, the Wisconsin Supreme Court held in *State v. Sarabia, 348 N.W.2d 527, 531 (Wis. 1984)*,

---

[5] State high courts also have imposed this requirement. *See, e.g., State v. Jones, 961 A.2d 322, 332 (Conn. 2008)* ("A defendant is entitled to an instruction on a lesser offense if … the following conditions are met … (4) the proof on the elements or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant not guilty of the greater offence but guilty of the lesser." (additional quotation omitted)*; People v. Cornell, 646 N.W.2d 127, 139 (Mich. 2002)* (to same effect).

that there need not be affirmative evidence for a court to be required to instruct down. It is enough, it explained, that there is "some evidence of a lesser offense even though this depends on an inference of a state of facts that is ascertained by believing defendant as to part of his testimony and prosecution witnesses on the other points in dispute." *Id.*, *quoting Belton v. United States, 382 F.2d 150, 155 (D.C. Cir. 1967).* Still, Wisconsin requires some basis in the evidence from which a rational juror could acquit of the greater offense and convict of the lesser. *Id.* The same is true in other states that follow Missouri's approach.[6]

Of course, states requiring affirmative evidence also require a basis in the evidence to support submission of a lesser included offense instruction. *See, e.g., State v. Fernandez-Medina, 6 P.3d 1150, 1154 (Wash. 2000).*[7] Indeed, so far as research has shown, all jurisdictions except Iowa and Florida, which are discussed below, require some support in the evidence for a court to be obligated to instruct down.[8]

---

[6] *See, e.g., Commonwealth v. Porro, 939 N.E.2d 1157, 1167 (Mass. 2010)* ("Where there is no evidence to justify a lesser included instruction … we have concluded that it is reversible error to allow the jury to convict the defendant of the lesser charge."); *State v. Keller, 695 N.W.2d 703, 716 (N.D. 2005); People v. Van Norstrand, 647 N.E.2d 1275, 1278 (N.Y. 1995)* ("Our inquiry is … whether, under any reasonable view of the evidence, it is possible for the trier of facts to acquit defendant on the higher count and still find him guilty of the lesser one."); *Perry v. Commonwealth, 839 S.W.2d 268, 273 (Ky. 1992).*

[7] *See also State v. Wall, 126 P.3d 148, 151 (Ariz. 2006); State v. Tomlin, 835 A.2d 12, 27 (Conn. 2003); State v. Dahlin, 695 N.W.2d 588, 595-97 (Minn. 2006); State v. Brent, 644 A.2d 593, 118 (N.J. 1994); State v. Tamburano, 271 N.W.2d 472, 475 (Neb. 1978); Bignall v. State, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994).*

[8] *See, e.g. Ex parte Smith, 756 So.2d 957, 963 (Ala. 2000)* ("A defendant is entitled to a charge on a lesser-included offense only if there is any reasonable theory from the evidence to support the charge"); *Wall, 126 P.3d at 151* (Arizona); *Atkinson v. State, 64 S.W.3d 259, 268 (Ark. 2002); People v. Hughes, 27 Cal.4th 287, 366 (Cal. 2002);*

Likewise, the Model Penal Code requires more than the mere fact that one offense is included nominally in another to warrant instructing down. It looks to the evidence, not to theory, to determine when to instruct down, stating: "The Court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *M.P.C. § 1.07(5)*. And our cases have held that the Model Penal Code's intent accords with the language of section 556.046. *Hibler, 5 S.W.3d at 150* ("The key language of Missouri's section 556.046 tracks section 1.07(4)-(5) of the Model Penal Code").

The only two states that go to the extreme advocated by the principal opinion are Iowa and Florida. Iowa appears to be the lone state that requires the submission of a lesser included offense instruction in all circumstances without considering whether there is a basis in the evidence for acquitting of the greater offense but convicting of the lesser offense.

Iowa adopted this automatic instruction rule in *State v. Jeffries, 430 N.W.2d 728, 737 (Iowa 1988)*, based on its belief that, if the evidence is sufficient to convict on the charged offense, then it is necessarily sufficient to convict on any lesser included

*Tomlin, 835 A.2d at 27* (Connecticut)*; State v. Hupp, 809 P.2d 1207, 1212 (Kan. 1991); Perry, 839 S.W.2d at 273* (Kentucky)*; Porro, 939 N.E.2d at 1167* (Massachusetts)*; Cornell, 646 N.W.2d at 130* (Michigan)*; Dahlin, 695 N.W.2d at 597* (Minnesota)*; Brent, 644 A.2d at 118* (New Jersey)*; Van Norstrand, 647 N.E.2d at 1278* (New York)*; Tamburano, 271 N.W.2d at 475* (Nebraska)*; Rosas v. State, 147 P.3d 1101, 1106-07 (Nev. 2006), abrogated on other grounds by Willing v. State, 2013 WL 3297070, at \*2 (Nev. May 14, 2013); Keller, 695 N.W.2d at 711* (North Dakota)*; State v. Wilkins, 415 N.E.2d 303, 308 (Ohio 1980); State v. Burns, 6 S.W.3d 453, 464 (Tenn. 1999); Bignall, 887 S.W.2d at 24* (Texas)*; Sarabia, 348 N.W.2d at 531* (Wisconsin).

offense.[9]   In support, Iowa cited decisions in Arkansas, Connecticut, Louisiana and Michigan.  *Id. at 733*.  Notably, each of these jurisdictions since has abandoned its automatic submission rule and now limits instruction on lesser included offenses to cases in which the evidence provides a basis for acquitting of the greater offense and convicting of the lesser.  *Atkinson, 64 S.W.3d at 268*; *Tomlin, 835 A.2d at 27*; *Cornell, 646 N.W.2d at 130*; *State v. Johnson, 823 So.2d 917, 923 (La. 2002)*; *LA. CODE CR. PRO. art. 814(A),(C)*.

Iowa's approach is inconsistent with the requirement of the many cases discussed above (and formerly of Missouri) that the court must determine that a basis in the evidence exists to acquit of the greater offense but convict of the lesser.  For this reason, states refer to an approach like Iowa's only to expressly reject it.  *See, e.g., Sarabia, 348 N.W.2d at 531; Wilkins, 415 N.E.2d at 307*.  In *Wilkins*, the Ohio Supreme Court describes the negative consequences of automatically requiring a court to instruct on a lesser included offense:

> [J]uries [are] not to be presented with compromise offenses which could not possibly be sustained by the adduced facts. Such unreasonable compromises are detrimental to both the state and the defendant. These compromises allow juries to lessen punishment at their unlimited discretion, even when they find the defendant guilty of the greater offense beyond a reasonable doubt. Further, they can allow juries to convict a defendant of a crime of which he is not guilty beyond a reasonable doubt with a clearer conscience than if only the greater offense were charged.

---

[9] Currently, Iowa Rule of Criminal Procedure 2.6 reflects this rule, stating:
> In cases where the public offense charged may include some lesser offense it is the duty of the trial court to instruct the jury, not only as to the public offense charged but as to all lesser offenses of which the accused might be found guilty under the indictment and upon the evidence adduced, even though such instructions have not been requested.

*Wilkins, 415 N.E.2d at 307*.

Even the United States Supreme Court implicitly has rejected a rule that automatically requires a trial court to instruct down, stating in *Sansone* that a lesser included offense instruction "*is only proper* where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." *380 U.S. at 349-50* (emphasis added). This is because an approach allowing submission without evidence is inconsistent with the United States Supreme Court's rule, discussed earlier, requiring a basis in the evidence for a lesser included instruction to be warranted and precludes instruction in cases where no evidence supports it. *See Keeble, 412 U.S. at 208*.

Florida also automatically requires submission of lesser included offense instructions for certain offenses. Its rule is based on Florida Rule of Criminal Procedure 3.510(b), which requires a trial court always to instruct down on a lesser offense that is a "necessarily included offense," that is, an offense that *always* is included in the greater offense. *State v. Wimberly, 498 So.2d 929, 932 (Fla. 1986)*. Instruction on other lesser offenses that may be, but are not necessarily, included in the greater offense, such as attempts and crimes divided into degrees, must be supported by evidence, however. *Id. at 931-32*. Accordingly, Florida's rule is based on specific Florida law and only requires automatic submission for certain lesser included offenses.

As is evident, this Court's traditional requirement that there be a basis in the evidence from which a rational juror could acquit on the greater offense and convict on

22

the lesser is consistent with the law of the United States Supreme Court and nearly every other state court.

## II.    *APPLICATION OF THIS STANDARD TO MR. JACKSON*

Applying Missouri's traditional lesser included offense law to Mr. Jackson, the first-degree robbery statute required the State to prove that Mr. Jackson robbed the victim while displaying or threatening the use of what appeared to be a deadly weapon.[10]  If the jury did not believe that Mr. Jackson used what appeared to be a weapon, then it would find him guilty only of the lesser included offense of second-degree robbery.

The State presented more than enough evidence to convict on first-degree robbery. The victim testified that Mr. Jackson was the culprit, that he put something to her back and forced her to take money from the cash register and give it to him, that she looked and saw it was a gun with a silver barrel, and that she knew it was a revolver.  There was a video showing the robber putting his hand containing what appeared to be a dark object against the victim's back and forcing her to give him money from the register, and the detective who testified said it was a gun.

But, to be entitled to a lesser included offense, Mr. Jackson only had to raise some question as to whether the object appeared to be a weapon, through affirmative evidence, impeachment, challenges to the State's evidence, or otherwise creating doubt, directly or

---

[10]*§ 569.020.1* ("A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime … (4) Displays or threatens the use of what *appears* to be a deadly weapon or dangerous instrument.") (emphasis added).

by inference. All inferences from the evidence will be resolved in favor of giving the instruction.

The standard for requiring a lesser included offense instruction was met here. On cross-examination, the detective agreed that it was "possible" that the object shown being pressed against the victim's back could have appeared to be a gun but was really a cell phone. He also said it was dark, and the video showed a dark object being held by the robber, which is inconsistent with the victim's description. Of course, the greater offense required proof only that defendant appeared to have a gun. But two customers also testified that while they saw the victim and defendant standing together at the cash register, they did not see a gun and did not realize it was a robbery, and no gun was found at defendant's home when it was searched. Finally, due to a malfunction in the recording equipment, the last part of the victim's direct examination and her entire cross-examination were not recorded. It is impossible, therefore, to know whether the questions not recorded would have affected the credibility of the victim's testimony as to whether she saw what appeared to be a gun. And, in closing argument, defense counsel argued that the victim was mistaken and that the inconsistencies in the testimony of the various witnesses did not support a finding of armed robbery.

I agree with the principal opinion that the trial court should have instructed the jury on the lesser included offense of second-degree robbery. There was a basis in the evidence from which a reasonable juror could find that Mr. Jackson committed the robbery but did not have a gun or what appeared to be a gun. Accordingly, a reasonable

24

juror could acquit Mr. Jackson of the greater offense and convict him of the lesser offense.

For these reasons, I agree with the principal opinion that the conviction should be reversed and the case remanded for a new trial but apply a different standard – the one always applied by Missouri until today – in so determining.

_____
**LAURA DENVIR STITH, JUDGE**


STATE OF MISSOURI,             )
                                           )

              Respondent,      )
                                           )

v.                                   )     No. SC93108
                                           )

DENFORD JACKSON,       )
                                           )

             Appellant.      )

## DISSENTING OPINION

I respectfully dissent from the principal opinion in that I believe the trial court did not err in refusing to give the instruction for the lesser included offense of robbery in the second degree. All of the evidence at trial suggested that Denford Jackson (hereinafter, "Jackson") carried and used a gun when he committed the robbery. There was no evidence supporting the instruction for second degree robbery. Accordingly, I would affirm the trial court's judgment.

A trial court is "obligated to instruct the jury with respect to a particular included offense only if there is a basis in the evidence for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for convicting the defendant of that particular included offense." Section 556.046.3,

RSMo Supp. 2002.[1]   Reversal is mandated only when the failure to offer the instruction was prejudicial to the defendant.  *State v. Derenzy*, 89 S.W.3d 472, 475 (Mo. banc 2002).

The principal opinion asserts that this Court found lesser included instructions were required to be given in *State v. Pond*, 131 S.W.3d 792 (Mo. banc 2004) and *State v. Williams*, 313 S.W.3d 656 (Mo. banc 2010).  The principal opinion further directs that, henceforth, it is mandatory to give a lesser included instruction solely because a jury may choose not to believe the State's evidence.  I disagree and find the principal opinion's rationale to be wanting.

In both *Pond* and *Williams*, there was evidence to support the lesser included instruction.  In *Pond*, the defendant was charged with statutory sodomy in the first degree.  *Pond*, 131 S.W.3d at 793.  The victim testified at trial that the defendant "press[ed] in [her] private area between [her] legs with his fingers…" and that the defendant put his fingers "in [her] body and it hurt."  *Id.* at 794.  Yet, on cross-examination, the victim admitted that the first time she mentioned penetration was at trial; previously, she reported to her mother, cousin, and a police officer that the defendant had only touched her.  *Id.*

This Court properly stated that a "defendant is entitled to an instruction on any theory the evidence establishes."  *Id.* (citing *State v. Hibler*, 5 S.W.3d 147, 150 (Mo. banc 1999).  Additionally, it is within the province of the jury to determine the credibility of the witnesses, resolve conflicting testimony, and weigh the evidence.  *Id.*

---

[1] All statutory references are to RSMo Supp. 2002 unless otherwise indicated.

2

"A jury may accept part of a witness's testimony, but disbelieve other parts. If the evidence supports differing conclusions, the judge must instruct on each." *Id.* (internal citations omitted).

There was conflicting testimony regarding the defendant's actions in *Pond*. Hence, there was a basis in the evidence from which the jury reasonably could decide the defendant touched the victim rather than penetrated her. *Id.* The defendant was entitled to the lesser included instruction. *Id.* at 795.

Similarly, in *Williams*, the defendant was charged with robbery in the second degree by acting with another. *Williams*, 313 S.W.3d at 657. The defendant testified in his own defense at trial, denying the charge against him. *Id.* The defendant requested, and the trial court denied, the lesser included instruction of felony stealing. *Id.*

Again, this Court instructed that a "defendant is entitled to an instruction on any theory the evidence establishes." *Id.* at 659 (quoting *Pond*, 131 S.W.3d at 794). This Court reiterated the fact that a jury may believe or disbelieve any of the evidence presented at trial. *Id.* at 660.

The evidence in *Williams* provided a basis for the jury to acquit him "of robbery in the second degree and convict him of felony stealing." *Id.* The jury could have believed the defendant's testimony and disbelieved another witness' testimony. *Id.* The defendant was entitled to the lesser included instruction. *Id.*

In this case, the principal opinion overlooks the basic evidence presented at trial. The only evidence presented was that Jackson had a gun. The witnesses and

victim testified they saw a gun. The police officer stated there was a gun. There was no contradictory evidence regarding the presence of a gun during the robbery. Moreover, there was no evidence that Jackson committed the robbery by any other method than the use of a dangerous instrument or deadly weapon. The only scintilla of information heard by the jury that could be latched onto and construed thereby that Jackson did not have a gun was a question by Jackson's attorney, which is not evidence.

Jackson is entitled to a lesser included instruction "only if there is a basis in the evidence for acquitting the defendant of the immediately higher included offense and there is a basis in the evidence for convicting the defendant of that particular included offense." Section 556.046.3. The jury is free to disbelieve all of the evidence presented by the State, which would acquit Jackson of the first-degree robbery. However, there was *no basis in the evidence* to support the instruction for the lesser included offense.

There was no conflicting testimony nor any contradictory evidence from which a jury could find Jackson guilty of robbery in the second degree. Moreover, there was no evidence that Jackson committed the robbery by any other method than the use of a dangerous instrument or deadly weapon. Further, the police detective who viewed the video surveillance and enlarged frames from the video stated that he saw a gun. The State was required only to prove that Jackson possessed *what appeared to be* a deadly weapon or dangerous instrument. Section 569.020, RSMo 2000 (emphasis ours).

4

"When there is no evidence indicating that the robbery was committed by some means other than the use of a deadly weapon or dangerous instrument, a lesser-included instruction is not required." *State v. Hand*, 305 S.W.3d 476, 481 (Mo. App. S.D. 2010); *see also State v. Eoff*, 193 S.W.3d 366, 373-74 (Mo. App. S.D. 2006) and *State v. Williams*, 857 S.W.2d 530, 532-33 (Mo. App. S.D. 1993). Should the jury not believe the State's evidence, it should be able to return a verdict of not guilty. Hence, the trial court did not err in refusing to submit the lesser included instruction requested by Jackson because there was no basis in the evidence to do so.[2] *See* section 556.046.3.

Further, by instructing that a trial court must give a lesser included instruction for the sole reason that the jury may disbelieve part of the State's evidence, this Court has eviscerated the language of the statute. The primary rule of statutory construction is to ascertain the intent of the legislature from the plain language used in the statute. *State v. Moore*, 303 S.W.3d 515, 520 (Mo. banc 2010). "When interpreting a statute, this Court must give meaning to every word or phrase of the legislative enactment." *Id.*

Section 556.046.3 provides that, for a lesser included instruction to be given, there must be a *basis in the evidence* to do so. In *Pond* and *Williams*, there was a basis in the evidence to provide the defendants with the lesser included offense instructions because there was conflicting testimony. In this case, all of the testimony indicated

---

[2] Since there was no evidence to support giving the lesser included instruction, there was no prejudice to Jackson in refusing to submit the instruction.

5

Jackson used a gun during the robbery; there was no conflicting evidence. This Court in essence adopts a mandatory rule requiring the giving of lesser included offense instructions in every criminal case no matter what the evidence at trial demonstrated, thus, ignoring the plain language of the statute.

Accordingly, I believe the trial court did not err in refusing to submit an instruction for a lesser included offense when there was no evidence to support it. I would affirm the trial court's judgment.

_____
GEORGE W. DRAPER III, JUDGE